**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **Evelyn Castaneda Martinez; Paul Neuman; David Brewer Jr.; Jamie Linn; Marisa Tatum; and Weston Clarke** | No. 1:21-cv-01053-RP |
| *Plaintiffs,* | |
| v. | |
| **Perry's Restaurants LTD d/b/a Perry's Steakhouse and Grille; and Christopher V. Perry, individually** | |
| *Defendants.* | |
| **Spencer Demoss** | No. 1:21-cv-01054-RP |
| *Plaintiff,* | |
| v. | |
| **Perry's Restaurants LTD d/b/a Perry's Steakhouse and Grille; and Christopher V. Perry, individually** | |
| *Defendants.* | |
| **Daniel Elizondo and Phylisha Martinez** | No. 1:21-cv-01055-RP |
| *Plaintiffs,* | |
| v. | |
| **Perry's Restaurants LTD d/b/a Perry's Steakhouse and Grille; and Christopher V. Perry, individually** | |
| *Defendants.* | |

| | |
|---|---|
| Stephen Hunzelman, Melina Adashefski, Ian Dobelbower, and John Vilbig | No. 1:21-cv-01056-RP |
| *Plaintiffs,* | |
| v. | |
| Perry's Restaurants LTD d/b/a Perry's Steakhouse and Grille; and Christopher V. Perry, individually | |
| *Defendants.* | |
| Katelyn Keefe | No. 1:21-cv-01057-RP |
| *Plaintiff,* | |
| v. | |
| Perry's Restaurants LTD d/b/a Perry's Steakhouse and Grille; and Christopher V. Perry, individually | |
| *Defendants.* | |
| Josh Ramirez and Ryan Dickman | No. 1:21-cv-01058-RP |
| *Plaintiffs,* | |
| v. | |
| Perry's Restaurants LTD d/b/a Perry's Steakhouse and Grille; and Christopher V. Perry, individually | |
| *Defendants.* | |

Sara Sharif, Anthony Ferracioli, Ashleigh Scott, and Dimitri Sebikali

    *Plaintiffs,*

v.

Perry's Restaurants LTD d/b/a Perry's Steakhouse and Grille; and Christopher V. Perry, individually

    *Defendants.*

No. 1:21-cv-01060-RP

---

## PLAINTIFFS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Respectfully submitted,

By: */s/ Drew N. Herrmann*

Drew N. Herrmann
Texas Bar No. 24086523
drew@herrmannlaw.com
Pamela G. Herrmann
Texas Bar No. 24104030
pamela@herrmannlaw.com
**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-840-5102
ATTORNEYS FOR PLAINTIFFS

# Table of Contents

I.      Overview of the Minimum Wage Claim and Tip Credit Defense ...................................... 1

II.     The Seven Cases Before the Court .................................................................................. 2

III.    Facts in Support of Summary Judgment .......................................................................... 3

IV.     Plaintiffs' Minimum Wage Claim .................................................................................. 13

    A. Plaintiffs were paid less than minimum wage and therefore to avoid liability
       Defendant must establish its entitlement to the tip credit defense ............................. 13

    B. Even under the procedural burdens of summary judgment, Defendant must prove
       compliance with the tip credit even if Plaintiffs earned more than minimum wage
       *after* accounting for tips ......................................................................................... 14

V.      Defendant Cannot Claim a Tip Credit ............................................................................ 16

    A. Defendant violated the tip credit as a matter of law because it required Plaintiffs to
       purchase uniforms, tools, and other non-203(m) items. ........................................... 17

    B. Defendant did not distribute the tip pool pursuant to an agreement among Plaintiffs
       and thus Defendant unlawfully controlled Plaintiffs' tips vis-à-vis the tip pool ........ 20

    C. Defendant cannot show that it fully distributed the tip pool solely among employees
       who were engaged in customarily and regularly tipped duties ................................... 24

        1. Defendant used the tip pool to pay employees who were engaged in nontipped
           duties such as cleaning bathrooms, scrubbing floors, preparing food, and various
           other nontipped and back-of-the-house duties ................................................... 28

        2. Defendant concedes it distributed tips to off-hour employees who were not
           present during the shift when the customer who left the tip was dining at the
           restaurant ........................................................................................................... 33

        3. Defendant used the tip pool to pay employees who were working the service
           well, which is located in the kitchen and out of sight from the customer .......... 34

VI.     Defendant Exploited the Tip Credit to Pay for Nontipped Work ..................................... 35

    A. Defendant used the tip credit to pay Plaintiffs less than minimum wage to complete
       various nontipped work assignments. ....................................................................... 35

        1. Plaintiffs are entitled to the full minimum wage for all time spent performing
           *unrelated* sidework duties. ............................................................................... 36

        2. Defendant unlawfully exploited the tip credit to pay Plaintiffs to perform
           substantial nontipped side work in violation of the 80/20 Rule. ........................ 39

# I.  OVERVIEW OF THE MINIMUM WAGE CLAIM AND TIP CREDIT DEFENSE

In this minimum wage case, Defendant cannot—and does not—dispute that it paid Plaintiffs $2.13 per hour, [ECF No. 3 at pp 6-7 ¶¶ 30-35[1]], which is less than the minimum wage ($7.25) required by Section 206 of the FLSA. Instead of paying Plaintiffs $7.25 per hour—the minimum hourly wage required by the FLSA—Defendant argues it is entitled to rely on tips to offset its obligation to pay Plaintiffs at least minimum wage.

Although, Section 206 of the FLSA requires employers to pay employees an hourly wage of at least $7.25 per hour, "the tip credit is an affirmative defense that allows employers to pay 'tipped employees' $2.13 per hour when the employees' tips equal at least $5.12 per hour, the difference between $2.13 and the general minimum wage." *Austin v. Creek Grp. Co.*, No. 4:20-CV-03363, 2023 U.S. Dist. LEXIS 44706, at *3 (S.D. Tex. Jan. 13, 2023) (citing § 203(m)(2)(A); *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *2 (5th Cir. Mar. 18, 2022) (per curiam)). In other words, if an employer carries its burden and proves[2] compliance with the tip credit, the employer is entitled to take a partial credit for the tips its employees earn (in an amount up to $5.12 per hour) to offset a portion of the employer's minimum wage obligation. *See Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015) (citing 29 U.S.C. § 203(m)); *Steele v. Leasing Enters.*, 826 F.3d 237, 242 (5th Cir. 2016) (the FLSA "mandates that employers pay employees a minimum wage of $7.25 per hour" unless employer can satisfy the elements of the tip credit defense) (citations omitted). The affirmative defense under Section

---

[1]  For ease of reference, unless there is a material difference among the seven cases, Plaintiffs will cite to documents and filings in *Martinez et al. v. Perry's Rest. Ltd., et al.,* No.1:21-cv-01053 (W.D. Tex.)

[2]  Defendant bears the burden of proving it complied with all the requirements for taking a tip credit. *See e.g., Steele v. Leasing Enters.*, 826 F.3d 237, 242 (5th Cir. 2016) ("[Perry's has] the burden to prove its entitlement to the tip credit.") (citing *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015)).

203(m) is commonly referred to as the "tip credit." *See Montano*, 800 F.3d at 188 (5th Cir. 2015).

Here, Perry's cannot rely on tips to supplement the $2.13 per hour wage it paid to Plaintiffs because Perry's cannot show it complied with the requirements for taking a tip credit. More specifically, Perry's cannot prove one or more of the following requirements for taking a tip credit: (1) it permitted Plaintiffs to retain all tips; (2) it distributed the tip pool pursuant to an agreement among Plaintiffs and the tip pool recipients; (3) it fully distributed the tip pool solely among customarily and regularly tipped employees; and (4) it did not utilize the tip credit to pay Plaintiffs when they were engaged in performing duties related to their occupations as servers and for no more than 20% of the time they were performing *related* nontipped duties.[3]

A single violation of any one of the FLSA's tip credit requirements will result in Defendant being divested of the tip credit for the relevant time period. *See Steele*, 826 F.3d at 246 (holding Perry's failed to comply Section 203(m) and therefore was "divested of its statutory tip credit for the relevant time period."). As discussed in detail below, because Defendant cannot claim a tip credit, Defendant is liable to Plaintiffs for the amount of the tip credit claimed for each hour worked plus reimbursement of all deductions and misappropriated tips.

## II. THE SEVEN CASES BEFORE THE COURT

For purposes of this Motion for Summary Judgment, there are seven cases before the Court—all asserting violations of the FLSA minimum wage provision.[4] These seven cases consist

---

[3] Plaintiffs are not moving for summary judgment on the issue of notice. *See Ettorre*, 2022 U.S. App. LEXIS 7295, at *6 ("[defendant] has the burden to prove its entitlement to the tip credit, including notice[.]").

[4] The seven cases before the Court on summary judgment are: *Martinez v. Perry's Rests. Ltd.,* No. 1:21-cv-1053, (W.D. Tex. filed Nov. 22, 2021); *DeMoss v. Perry's Rests. Ltd.,* No. 1:21-cv-1054 (W.D. Tex. filed Nov. 22, 2021); *Elizondo v. Perry's Rests. Ltd.,* No. 1:21-cv-1055 (W.D. Tex. filed Nov. 22, 2021); *Hunzelman v. Perry's Rests. Ltd.,* No. 1:21-cv-1056 (W.D. Tex. filed Nov. 22, 2021); *Keefe v. Perry's Rests. Ltd.,* No. 1:21-cv-1057 (W.D.

of nineteen Plaintiffs who originally opted-in to *Helgason v. Perry's Restaurants LTD*, No. 3:20-cv-01573-S (N.D. Tex. filed June 12, 2020). After the court in *Helgason* denied notice and dismissed the opt-ins without prejudice, the opt-ins refiled their claims across these seven cases.

### III.   FACTS IN SUPPORT OF SUMMARY JUDGMENT

**A.   Defendants' Rule 30(b)(6) Corporate Representative Testimony**

1.   In *Helgason, et al. v. Perry's Restaurants Ltd.*, Richard Henderson (Henderson, PRL Chief Operating Officer) and David Freeman (Freeman, Director of Operations) were Defendants' Rule 30(b)(6) corporate designees regarding the Rule 30(b)(6) deposition topics. *See* Pls Ex. 25 and 26 (*Helgason v. PRL*, Rule 30(b)(6) Depos).

2.   In this case, Defendant designated Henderson (PRL Chief Operating Officer), Priscilla Ortiz (payroll), Gray Gutierrez (human resources), Sarah Cotaya (Sr. Training Director), Greg Grady (Sr. General Manager), Rebecca Munns (Sr. General Manager), and Anthony Garcia (General Manager) as Defendants' Rule 30(b)(6) corporate designees regarding the topics in Plaintiffs' Rule 30(b)(6) deposition notice.

**B.   Plaintiffs were paid less than minimum wage.**

2.   Plaintiffs worked as servers for Defendants. Defendant paid Plaintiffs $2.13 for all hours worked as servers. *See* Ex. 34 (Keefe Depo 36:4-5); Ex. 37 (Scott Depo 29:18-22); Ex. 30 (Clarke Depo 41:17-20).

**C.   Defendants required Plaintiffs to pay for uniforms and incur other expenses.**

4.   Defendants required Plaintiffs to have and pay for various mandatory uniform

---

Tex. filed Nov. 22, 2021); *Ramirez v. Perry's Rests. Ltd.*, No. 1:21-cv-1058 (W.D. Tex. filed Nov. 22, 2021); *Sharif v. Perry's Rests. Ltd.*, No. 1:21-cv-1060 (W.D. Tex. filed Nov. 22, 2021).

items and other tools to perform their jobs as servers for Defendants. *See* Ex. 25 (Freeman Corp Rep 66:6-69:23); Ex. 26 (Henderson Corp Rep 63:1-65:2); Ex. 32 (Elizondo Depo 102:4-16; 103:8-22; 104:5-9); Ex. 33 (Sharif Depo 61:10-15; 61:24-25; 62:8-12) ("if we had cash tips, we used that to pay for a new pepper mill or new crumber"); Ex. 30 (Clarke Depo 51:24-52:3; 107:23-108:8); Ex. 31 (Neuman Depo 51:16-22); Ex. 38 (E. Martinez Depo 54:19-55:14; 56:15-16) Ex. 29 (Garcia Corp Rep 119:7-18; 120:5-8).

5.      Defendants required Plaintiffs to obtain and purchase TABC Certification. *See* Ex. 26 (Henderson Corp Rep 96:15-99:9); Ex. 25 (Freeman Corp Rep 68:5-20); Ex. 32 (Elizondo Depo 103:23-104:5); Ex. 33 (Sharif Depo 101:13-20); Ex. 37 (Scott Depo 20:2-3); Ex. 31 (Neuman Depo 56:6-16).

6.      Defendants also required Plaintiffs to have, and purchase, ink pens, lighters, wine key, flashlight, a cash bank, server-black book (for orders), and non-slip dress shoes. *See* Ex. 8 at App. 052-053 (Server and Cocktail Uniform Guidelines) (identifying uniform, other items, and additional tools such as wait book, wine key, lighters, (4) black clip pens, black markers, crumber, bottle opener—provided by employees); Ex. 32 (Elizondo Depo 92:2-7; 95:9-19; 96:8-10); Ex. 33 (Sharif Depo 100:3-101:7); Ex. 31 (Neuman Depo 51:6-9; 56:17-21); Ex. 30 (Clarke Depo 111:20-24); Ex. 39 (Vilbig 66:13-15; 66:24-25; 69:20-23); Ex. 38 (E. Martinez Depo 58:18-20).

**D.      The Mechanics of Defendants Tip Pool.**

7.      Defendants required Plaintiffs (along with all its other servers) to contribute a portion of their tips to a tip pool. At all times during their employment, Plaintiffs were required to fund the tip pool with their tips at a rate of 4.5% of their sales for every shift they worked. Ex. 30 (Clarke Depo 46:18-20) Ex. 35 (Dickman Depo 51:24-52:1).

8.      Only servers were required to fund the tip pool. Plaintiffs were always required to contribute the same amount of tips (4.5% of their sales) during each and every shift—even during shifts when some positions were not staffed and Plaintiffs did not have support. *See* Ex. 35 (Dickman Depo 55:4-7)

9.      Defendants used the tips it collected from its servers to fund its obligation to pay fixed hourly wages it guaranteed to its other employees—without regard to whether the employee worked with Plaintiffs or whether they provided any service to the customer who left the tip.

**E.      Defendants used tips to fund the wages of its employees who were required to perform nontipped duties that were unrelated to serving customers.**

11.     Defendants used a portion of the tips Plaintiffs contributed to the tip pool to pay nontipped employees, including employees who were engaged in nontipped duties such as cleaning bathrooms, scrubbing floors, or performing other nontipped or back-of-the-house duties. *See e.g.,* Ex. 25 (Freeman Corp Rep 80:9-25) (used tips to pay employees who were cleaning bathrooms).

**a.      *Defendant distributed tips the "service well" who did not interact with customers***

12.     Defendant used Plaintiffs' tips to pay the service well (a/k/a service bartender) who did not interact with or serve customers, but instead were confined to working in the kitchen. *See* Ex. 25 (Freeman Corp Rep 31:23-32:22) ("Q. At the Perry's in Grapevine, where is the service well located? A. It's in the kitchen near the beverage station. Q. Can customers walk in there and order a drink from the service well? A. No."); Ex. 28 (Grady Corp Rep 46:20-22); Ex. 29 (Garcia Corp Rep 60:20-22; 100:2-12); *See also* Ex. 30 (Clarke Depo 54:11-16; 54:22-25) (testifying that the service well bar is in the kitchen); Ex. 37 (Scott Depo 55:5-10; 55:24-56:4).

13.     Unlike bartenders, the service well "bartenders" did not have ***any*** contact with customers. *See* Ex. 34 (Keefe Depo 47:25-48:13) (testifying that the service well is in the kitchen

and "guests didn't know that [service well bartenders] existed").

14.     The service well bartender also performed nontipped work such as cleaning the beer/wine coolers (doors, handles, gaskets and interior), ice well and soda gun, glasswasher and all tools in the glasswasher, cocktail coolers (doors, handles, gaskets, and interior), walls behind cooler, sides of the cooler, behind the trashcans, and every closing shift. *See* Ex. 16 (Service Well Checklist 2021).

### b. *Defendant distributed tips to pay "bussers" who performed nontipped, nonservice related duties*

13.     Defendants used Plaintiffs' tips to pay bussers while they performed various non-tipped tasks such as cleaning bathrooms and other areas of the restaurant. *See* Ex. 25 (Freeman Corp Rep 80:9-15); Ex. 28 (Grady Corp Rep 141:16-19); Ex. 29 (Garcia Corp Rep 98:14-16); Ex. 38 (E. Martinez 89:20-23). *See also* Ex. 4 at App. 39(Busser Checklist 02/07/2019); Ex. 9 (Perry's Frisco Busser Daily Cleaning); Ex. 11 at App. 059 (Busser Floor Cleaning Procedures) (stating that "restrooms must be cleaned with a separate mop" and referring to "Restroom Floor Cleaning Procedure"); Ex. 9 (Perry's Dallas and New Stores Busser Daily Cleaning); Ex. 5 at App. 045 (Perry's Busser Checklist 01/2020).

14.     The bussers checked the restrooms (which included checking the restroom "sinks, counters, mirrors, doors & sweep[ing] floors, and restock toilet paper, soap & hand towels") every 20 minutes; cleaned the restrooms; and "clean[ed] building exterior, including the walkways, parking lot, patio & landscaping." Ex. 6 at App. 046-47 (Busser Checklist 2021).[5]

15.     Defendant paid bussers using Plaintiffs' tips to clean the restrooms. *See* Ex. 25

---

[5] *See also* Ex. 12 at App. 060-061 (Busser Restroom Cleaning Checklist); Ex.15 at App. 075-078 (Busser Facilitator Guide - Restroom Check and Restroom Cleaning).

(Freeman Corp Rep 29:10-12) (bussers are paid $2.13 per hour); Ex. 25 (Freeman Corp Rep 80:16-18) ("Q. . . .are bussers responsible for cleaning the restrooms? A. Yes."); Ex. 28 (Grady Depo 141:6-8); Ex. 33 (Sharif Depo 69:11-14) ("Q. Were you ever required on a regular basis to clean toilets? A. . . .[t]hat was the bussers' job."). *See also* Ex. 12 at App. 060-61 (Busser Restroom Cleaning Checklist); Ex. 11 at App. 59 (Busser Floor Cleaning Procedures) ("restrooms must be cleaned with a separate mop" and referring to "Restroom Floor Cleaning Procedure").

16.     The bussers were engaged in dual jobs performing nontipped work including cleaning duties, kitchen duties, and back-of the house maintenance duties. Specifically, the bussers were responsible for job duties that included prep duties, removing bus tubs with dirty dishware from specific landing spots throughout the restaurant and preformed bathroom checks, emptied the trash, vacuumed and mopped all floors, and scrapped dirty dishes. *See Id. See also* Ex. 29 (Garcia Corp Rep 98:17-18) ("Q. Who's responsible for mopping the floors? A. Bussers."); Ex.28 (Grady Corp Rep 129:4-6; 174:6-23); Ex. 34 (Keefe Depo 96:16-25) ("When I was an opener, he [busser] would be there already and either be cleaning the chandeliers on a ladder, mopping, vacuuming, deep cleaning the toilets in the bathroom. . . .); Ex. 38 (E. Martinez Depo 79:13-23)

17.     Indeed, bussers were trained pursuant to Perry's "Busser Sidework and Steps of Service" which included cleaning the floors: carpets, tile, and drains; cleaning bathrooms and bathroom checks; taking out the trash; taking out dirty lines; detail and special "cleaning projects (i.e. chandeliers, vents, etc.)"; equipment maintenance: breaking down and cleaning glass dishwasher, cleaning vacuum cleaners; perimeter checks; and "dish pit assistance (as scrapper)." Ex. 13 at App. 62-70 (Busser Training Day 1-3).

### c. Defendant distributed tips to pay "barbacks" who performed nontipped, nonservice related duties

18.     Defendant used Plaintiffs' tips to pay barbacks to perform various non-tipped tasks. *See* Ex. 25 (Freeman Corp Rep 19:10-13; 33:5-34:1). The barbacks job was to assist the bartenders, not the servers—yet Defendant paid the barbacks using tips that servers (and only servers) contributed to the tip pool. *See* Ex. 25 (Freeman Corp Rep 80:9-15); Ex. 26 (Henderson Corp Rep 81:13-83:5).

19.     The barbacks were responsible for completing nontipped job duties such as, washing glassware, loading and unloading the bar dishwasher, refiling the bar ice bins, cleaning drain floors, breaking down and cleaning glass dishwasher and drainboard, and emptying and taking out the bar garbage. *See* Ex. 17 at App. 093 (Email re Frisco Barback Role 07/12/2018) (barbacks "responsible for scrubbing/mopping the bar floor, breaking down/cleaning the glasswasher"); Ex. 19 at App. 100 (Email re Grapevine Barback Responsibilities 07/14/2018). *See also* Ex. 0 (Bar Checklists); Ex. 0 (Barback Checklist-Updated 12.18); Ex. 20 (Barback Checklist 02/2019).

### d. Defendant distributed tips to pay "food runners" who performed nontipped, nonservice related duties

21.     Defendant paid food runners $2.13 for all hours worked. *See* Ex. 25 (Freeman Corp Rep 30:14-16) (food runners are paid $2.13 per hour).

22.     Food runners worked primarily as expediters in the kitchen and were responsible for food preparation duties. *See* Ex. 29 (Garcia Corp Rep 115:17-25) (food runners are assigned to positions in the kitchen—main window, salad window, appetizer window); Ex. 27 (Cotaya Corp Rep 53:17-25) (defining an expediter as "[s]omebody who takes the food from the cooks and puts it on a tray to send it out to the guests"); *see also* Ex. 4 at App. 41 (Food Runner Checklist 02/2019);

Ex. 1 at App. 001-024 (Email re Food Runner Checklist and Duties); Ex. 2 at App. 025-031 (Perry's Grapevine Food Runner Training Excerpts); Ex. 3 at App. 32-34 (Email Re-Department Checklists 02/26/2019) (stating that "opening chef [] assign[] the FR duties").

21.     Indeed, food runners performed their job duties on "the line" (also known as the expo line—located in the kitchen) and in the expo area of the kitchen; and were responsible for setting up "the line" and preparing "the line" with garnishes and sauces, cutting porkchops, and prepping for flambee orders and restocked flambee carts, setting up and cleaning the bread station, bread cutting, and cleaning and scrubbing the floors. *See* Ex. 28 (Grady Corp Rep 141:12-19); Ex. 29 (Garcia Corp Rep 98:19-25) ("A. At one point in time they [food runners] did the expo line. Q. When you say the expo line, they mopped the floor in front of the expo line? A. Yes, sir."); Id. (Garcia Corp Rep 99:1-15); Ex. 4 at App. 041 (Email re Department Checklists 03/06/2019) (food runners responsible for "[p]olishing plateware and utensils used on the [expo] line" and "setting up the [expo] line" in the kitchen); Ex. 3 at App. 032-34 (Food Runner Checklist 02/2019).

22.     Food runners were required to perform and complete food preparation duties— food prep list—before the restaurant opened. *See* Ex. 18 at App. 094-099 (#24 FOH Weekly Focus-09/29/2018) (Food Runner: "[food] [p]rep list completion before start of shift").

23.     Food Runner runners also performed unrelated nontipped work such as wiping down microwave and expo burners; cleaning and scrubbing cooler, sinks, trays, and bins; and detail cleaning the expediter line. *See* Ex. 29 (Garcia Corp Rep 98:19-25) Ex. 4 at App. 41 (Food Runner Checklist 02/2019); Ex. 0 (Food Runner Checklist 03/2020); Ex. 16 at App. 84 (Food Runner Checklist 2021). Food runners were also responsible for cleaning other areas of the restaurant. *See* Ex. 18 at App. 094-95 (#24 FOH Weekly Focus-09/29/2018) (Food Runner: "[c]leaning windows

on Fridays"); *see also* Ex. 38 (E. Martinez Depo 84:8-85:4).

### d. Defendant distributed tips to pay the "hosts" who performed nontipped, nonservice related duties

26.     Defendant used tips to pay hostesses while they performed various non-tipped tasks such as: wiping down Perry's sign outside, bathroom checks, reservations, answering phones, cleaning menus and bar books, cleaning coat closet, cleaning highchairs and booster seats, taking out the trash and replacing trash bags, and vacuuming the restaurant. *See* Ex. 25 (Freeman Corp. Rep. 80:19-22); Ex. 25 (Freeman Corp. Rep. 30:10-12) (hostesses paid $2.13 per hour); Ex. 29 (Garcia Corp Rep 61:1-3) (hostess received tips from the tip pool). *See also* Ex. 23 (Host Daily Cleaning Checklist and Responsibilities) (identifying additional cleaning duties such as dusting celling and vents, cleaning outdoor furniture, and cleaning chandelier that must be done before opening); Ex. 4 at App. 42 (Host Shift Checklist 02/2019).

## F. Defendant used tips to fund the wages of its employees who were not present at the restaurant, and therefore, were not involved in serving the customer who left the tip.

27.     Defendant funded the fixed hourly wages of its employees using tips it collected from all its servers over the course of a week. *See* Ex. 29 (Garcia Corp Rep 108:11-24; 120:9-12) (testifying that bartenders were "maxed out" at $10 per hour); Ex. 30 (Clarke Depo 58:10-14); Ex. 32 (Elizondo Depo 75:13-25; 76:21-77:4; 79:20-25); Ex. 33 (Sharif Depo 32:1-4); Ex. 35 (Dickman Depo 12:5-9; 13:18-23; 14:24-25; 56:6-7); Ex. 38 (E. Martinez 106:16-20)

28.     Defendant used these tips to fund the guaranteed hourly wages of other employees who were not present at the restaurant, and therefore, not involved in serving the customer who left the tip. *See* Ex. 29 (Garcia Corp Rep 88:1-89:1).

29.     Defendant would use Plaintiffs' tips to pay, for example, bussers for their time performing nontipped duties while opening the restaurant. In addition, Defendant would cut or

not schedule bussers or food runners, leaving Plaintiffs to take on and complete all the bussers or food runners assigned duties (including their nontipped duties). *See* Ex. 30 (Clarke 72:20-73:5); Ex. 34 (Keefe Depo 32:4-15; 33:3-11; 35:4-6); Ex. 33 (Sharif Depo 68:9-11; 68:16-21); Ex. 37 (Scott Depo 50:6-9; 50:22-25; 52:4-17); Ex. 31 (Neuman Depo 46:5-8).Yet, Defendant still used Plaintiffs' tips to pay these nonexistent bussers for their time that was spent solely performing nontipped duties. *See Id.*

30.     Finally, Plaintiffs were always required to contribute tips at a rate of 4.5% of sales to the tip pool, regardless of whether all positions were staffed or whether Defendant sent staff home early—requiring Plaintiffs to take on and complete their job duties. *See* Ex. 36 (Ferracioli Depo 58:20-59:5); Ex. 32 (Elizondo Depo 39:20-22; 75:1-10; 78:23-25); Ex. 33 (Sharif Depo 35:2-7; 36:1-5; 37:7-13; 42:14-15); Ex. 37 (Scott Depo 52:4-17).

**G.     Defendant paid Plaintiffs $2.13 per hour even when they were assigned nontipped job duties and required to complete other nontipped work assignments.**

31.      Plaintiffs were always paid $2.13 per hour, regardless of the time spent performing non-tipped job duties or the type of job duties performed. Ex. 25 (Freeman Corp. Rep. 23:10-16; 25:8-11; 37:3-5).

32.     Plaintiffs spent approximately 35% to 55% of their time each shift performing non-tipped job duties before, during, and after their shift at a rate of $2.13 per hour. *See* Ex. 32 (Elizondo Depo 99:18-21; 100:21-101; 101:5-7); Ex. 33 (Sharif Depo 87:18-25-86:6; 93:2-4; 93:20-22; 107:10-25); Ex. 37 (Scott Depo 86:19-25; 90:16-23; 93:12-13; 95:16-18; 96:7-99:5; 99:20-100:5; 105:24-106:6); Ex. 35 (Dickman Depo 74:22-25; 77:7-11; 77:14-18; 79:6-18); Ex. 31 (Neuman Depo 41:8-11; 41:16-42:1); Ex. 38 (E. Martinez 95:21-96:21; 97:1-6). *See also* Ex. 39 (Vilbig Depo 19:9-11) (". .

.no place I had ever been to had anything side-work-wise that is comparable to what we did at Perry's"); *Id*. (Vilbig Depo 43:11-13; 44:6-14).

33. Plaintiffs were required to perform a number of non-tipped duties, both, *related* and *unrelated* to their tipped occupation as servers including resetting chairs and tables, cleaning tables, and taking back to the kitchen and emptying buss tubs; cleaning different areas of the restaurant; dishwasher duties (i.e. polishing glassware and silverware and cleaning steak trays, pork chop boards, and other plate ware); and back of the house duties, including food prep. *See* Ex. 30 (Clarke Depo 56:15-25) ("it feels like I'm doing—as a server two to three jobs for $2 an hour. . ."); Ex. 37 (Scott Depo 50:6-8) ("working in many different roles in the restaurant, outside of a server, that should not have been paid [at] 2.13"); *see also* Ex. 30 (Clarke Depo 83:2-3; 83:15-20; 103:9-14); Ex. 35 (Dickman Depo 94:22-95:13; 95:15-96:15); Ex. 31 (Neuman Depo 40:23-3; 45:1-46:1); Ex. 39 (Vilbig Depo 28:16-29:7; 37:7-18).

34. Plaintiffs were required to perform nontipped work such as cleaning and food preparation duties. *See* Ex. 30 (Clarke Depo 57:2-3; 69:9-11) ("Vacuuming, [w]indexing the glass window, all of that. As a server, that's our responsibility." And "there was traying up all the bread for the evening. . .putting it in the oven"); *Id*. (Clarke Depo 87:18-88:7); Ex. 36 (Ferracioli Depo 88:12-25; 89:7-10; 98:16-99:11); Ex. 32 (Elizondo 66:16-67:11; 101:12-16; 103:2-3) (regularly required to take out the trash and stating that taking out the trash "was part of the side work"); Ex. 33 (Sharif Depo 69:7-8; 69:15-23; 98:12-13) (required to bake bread, take out the trash, and vacuumed); Ex. 31 (Neuman Depo 46:6-8). Indeed, servers had a separate set of requirements for deep cleaning. *See* Ex. 28 (Grady Corp Rep 145:13-15).

35.     Plaintiffs were assigned nontipped back of the house duties and required to perform nontipped work in the kitchen and on the expo line in the kitchen area, such as cutting fruit and garnishes, cutting limes, wrapping lemons, preparing bread for the oven, whipping butter to pipe into ramekins, and preparing and filling ramekins with applesauce, butter, ketchup. *See* Ex. 30 (Clarke Depo 67:21-68:16; 87:19-88:7; 103:9-14) (responsible for piping butter, baked potato station, preparing ice tea station, brewing ice tea); Ex. 36 (Ferracioli Depo 99:12-100:8; 100:14-19); Ex. 32 (Elizondo Depo 100:1-11; 101:21-3); Ex. 33 (Sharif Depo 73:25-6; 96:6-25; 98:5-8); Ex. 28 (Grady Corp Rep 141:3-5); Ex. 35 (Dickman Depo 70:25-71:22); *Id.* (Dickman Depo 94:22-95:13) (identifying opening duties performed in the back of the house); *Id.* (Dickman Depo 95:15-96:15) (identifying closing duties performed in the back of the house). *See also* Ex. 39 (Vilbig Depo 21:6-23:7) ("Q. . . . What are of the things that you did at Perry's that you didn't do at Del Frisco's for opening side work? A. . . .the prep - - the food prep that you have to do in the back of house."); *Id.* (Vilbig Depo 22:20-24:9).

36.     Plaintiffs were also responsible for nontipped work such as preparing or breaking down the beverage station, brewing tea, wiping down tables, washing polishing racks of glasses, and washing server trays. *See* Ex. 30 (Clarke Depo 82:20-22; 83:15-17) ("every server was responsible for washing and sanitizing ten server trays for the evening").

## IV.     PLAINTIFFS' MINIMUM WAGE CLAIM

### A.     Plaintiffs were paid less than minimum wage and therefore to avoid liability Defendant must establish its entitlement to the tip credit defense

"The FLSA requires covered employers to pay 'nonexempt employees' a minimum wage for each hour worked, 29 U.S.C. § 206(a), but allows employers to pay less than the minimum wage to employees who receive tips, 29 U.S.C. § 203(m)." *Galleher v. Artisanal, LLC*, No. 1:19-

cv-55-MOC-WCM, 2021 U.S. Dist. LEXIS 12905, at *11 (W.D.N.C. Jan. 25, 2021) (quoting *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 680 (D. Md. 2012)).

Here it is undisputed that Defendant, a covered enterprise,[6] paid Plaintiffs $2.13 per hour to work as servers,[7] which is less than the minimum wage required by Section 206 of the FLSA. *See* 29 U.S.C. § 206; *see also Steele v. Leasing Enters.*, 826 F.3d 237, 242 (5th Cir. 2016) (the FLSA "mandates that employers pay employees a minimum wage of $7.25 per hour" unless an employer can satisfy the elements of the tip credit defense) (citations omitted). Thus, to avoid a violation of the FLSA's minimum wage requirement, Defendant must prove it complied with the requirements for taking a tip credit—an affirmative defense under Section 203(m) of the FLSA, 29 U.S.C. § 203(m). However, as discussed below, Perry's is unable to demonstrate compliance with several of the tip credit requirements and thus it is unable to take a tip credit as a matter of law.

**B.    Even under the procedural burdens of summary judgment, Defendant must prove compliance with the tip credit even if Plaintiffs earned more than minimum wage *after* accounting for tips**

Even under the procedural burdens of summary judgment, the employer "has the burden of establishing its entitlement to the tip credit." *See Montano*, 800 F.3d at 189 (5th Cir. 2015)(citing *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (holding that a restaurant "had the burden to prove it operated a legal tip pool"); *Ettorre*, 2022 U.S. App. LEXIS 7295 , at *6 ("[defendant] has the burden to prove its entitlement to the tip credit") (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986) ("[W]here the nonmoving party will bear the burden of proof

---

[6]     *See e.g., Defs Answer*, [ECF No. 3 at p 4 ¶¶ 19-20 and 22-24] ("PRL admits that it qualifies as an employer under the FLSA.").
[7]     *See e.g., Defs Answer*, [ECF No. 3 at pp 6-7 ¶¶ 30-35] ("admits that Plaintiff[s were] paid at a tip credit rate of $2.13 for work [] performed as a server[.]")

at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'. . . Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'")); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 475 (11th Cir. 1982) ("We do not believe that an employee must, as a part of his prima facie case, prove that the employer is not entitled to such a credit where the employer has not maintained the required records to substantiate the claimed credit.").

Nevertheless, Defendant will likely argue that it did not violate the FLSA because Plaintiffs earned more than minimum wage *after* accounting for tips.[8] Regardless, courts have rejected similar arguments as nothing more than a flawed attempt by the employer to take credit for *all* Plaintiffs' tips. *See e.g., Bernal v. Vankar Enters.*, 579 F. Supp. 2d 804, 807 (W.D. Tex. 2008) (rejecting argument that wages plus tips always exceeded minimum wage—finding such an argument is a "misreading of the FLSA's tip credit provision[.]") (citing 29 U.S.C. § 203(m)); *Whitehead v. Hidden Tavern, Inc.*, 765 F. Supp. 2d 878, 882 (W.D. Tex. 2011) (rejecting argument that an employee always earned more than minimum wage with tips included—finding such an argument "misses the issue."). "In essence, Defendant is arguing that a person who receives as much as $1,000 a week from [tips] does not need minimum wage or overtime protection. Defendant's argument is specious." *Harrell v. Diamond A Ent., Inc.*, 992 F. Supp. 1343, 1357 (M.D. Fla. 1997) (employer violated the FLSA's minimum wage provisions despite plaintiffs receiving as much as $1,000.00 per week in tips).

---

[8]    *See Defs Answer*, [ECF No. 3 at p 7 ¶ 39] (defendant "contends that Plaintiffs generally were compensated far beyond any statutory minimum wage of for their work as servers[.]").

Indeed, as decades of legal precedent firmly establish, Defendant must prove compliance with the tip credit *before* it can obtain a tip credit to offset its obligation to pay Plaintiffs the minimum wage. *See Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977) ("if the employer does not follow the command of the statute, he gets no credit.").

## V.     DEFENDANT CANNOT CLAIM A TIP CREDIT

*Perry's cannot rely on tips to supplement Plaintiffs' wages because Perry's violated the tip credit and otherwise has no evidence to contradict one or more of the following: (1) Defendant did not permit Plaintiffs to retain all tips; (2) Defendant exercised unlawful control over Plaintiffs' tips; (3) Defendant did not fully distribute all tips from the tip pool solely among employees engaged in customarily and regularly tipped duties; and (4) taking a tip credit and paying Plaintiffs $2.13 to perform nontipped duties.*

In accordance with the FLSA's tip credit, an employer may, under limited circumstances, "pay tipped employees an hourly rate less than the federal minimum wage, by allowing them to credit a portion of the actual amount of tips received by the employee against the required hourly minimum wage." *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334 at *1 (S.D. Tex. 2006). "In other words, [under 29 U.S.C. § 203(m),] the employer may take credit for an employee's tips to make up the difference between the cash wage of $2.13 [the employer] pays and the minimum wage [the employer] owes its wait staff." *Chisolm v. Gravitas Rest. Ltd.*, No. H-07-475, 2008 U.S. Dist. LEXIS 28254, at *2 (S.D. Tex. Mar. 25, 2008).[9]

"As a general rule, the 'tip credit' exception can only be claimed if the employer shows: (1) the employer informed the employees of the provisions contained in § 203(m); and (2) the

---

[9]     The $5.12 tip credit is calculated by taking the difference between full minimum wage ($7.25) and the amount of subminimum hourly wage paid ($2.13) (i.e. [$7.25-$2.13=$5.12]). *See Hall v. Adelphia Three Corp.*, Civil Action No. 21-01106, 2023 U.S. Dist. LEXIS 18529, at *11 (D.N.J. Jan. 31, 2023) ("The amount of the tip credit is the difference between the worker's wage per hour and the minimum wage pursuant to 29 U.S.C. § 206 of [$]7.25 per hour.") (quoting *Acosta v. A.C.E. Rest. Grp., Inc.*, No. 15-7149, 2017 U.S. Dist. LEXIS 89640, 2017 WL 2539387, at *3 (D.N.J. June 12, 2017)).

tipped employees retain all of their tips. 29 U.S.C. § 203(m). Moreover, although the statute permits the 'pooling of tips among employees who customarily and regularly receive tips,' 29 U.S.C. § 203(m), '[i]f an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit.'" *Williams v. Sake Hibachi Sushi & Bar, Inc.*, 2020 U.S. Dist. LEXIS 106701, at *7-8 (N.D. Tex. June 18, 2020) (quoting *Montano*, 800 F.3d at 189 (5th Cir. 2015)).

As discussed below, Perry's cannot prove compliance with the tip credit because Plaintiffs were required to purchase uniforms, tools, and other items, and thus Plaintiffs did not retain all tips. In addition, Perry's did not distribute the tip pool pursuant to any agreement with Plaintiffs. Moreover, it is undisputed that Perry's dispersed tip pool contributions to employees who were not engaged in customarily and regularly tipped duties. Finally, it is undisputed that Perry's took a tip credit and paid Plaintiffs $2.13 per hour to perform nontipped duties, including nontipped duties that even if *related* to their tipped occupation as servers, exceeded twenty percent of the time worked. Accordingly, Perry's cannot rely on the tip credit as a matter of law, and therefore, is liable to Plaintiffs for the full minimum wage for each hour worked. *See* 29 U.S.C. § 216(b).

**A.    Defendant violated the tip credit as a matter of law because it required Plaintiffs to purchase uniforms, tools, and other non-203(m) items.**

In order to take a tip credit under section 203(m) of the FLSA, tipped employees must be permitted to retain all their tips except, as discussed *infra* at Section V., C., for tips contributed to a lawful tip pool. *See* 29 U.S.C. § 203(m); *see also Whitehead v. Hidden Tavern, Inc.*, 765 F.Supp.2d 878, 883 (W.D. Tex. 2011) ("[t]he language in Section 203(m) is clear that 'all tips' received by tipped employees must be retained by the tipped employees. Accordingly, an employer cannot keep the tips of a tipped employee as such constitutes a violation of the FLSA."). "Since tipped

employees must be allowed to keep all their tips, *see* 29 U.S.C. § 203(m)(2)(B), any deductions by the employer must be made from the direct wage paid. And, because there is no dispute that Defendant paid Plaintiffs a direct wage of $2.13 - the minimum wage for tipped employees — any deduction, no matter how small, would lower Plaintiffs' direct wage below the minimum wage." *Lopez v. Fun Eats & Drinks, LLC*, No. 3:18-cv-1091-X, 2021 U.S. Dist. LEXIS 132407, at *16-17 (N.D. Tex. 2021) (citation omitted).

Indeed, Fifth Circuit recently held, if tipped employees are required to pay for uniforms, tools, or other items, the employer has "violate[d] § 203(m) unless the 'facilities' it covers counts as a 'wage.'" *Ettorre*, 2022 U.S. App. LEXIS 7295, at *9 (5th Cir. Mar. 18, 2022); *see also Steele v. Perry's Rest., LLC*, 2015 U.S. Dist. LEXIS 25418, at *52 (S.D. Tex. 2015) (Hughes, J.) (finding Perry's was divested of the tip credit for making unlawful deductions from its servers' tips for credit card processing fees), *aff'd sub nom.*, 826 F.3d 237, 240 (5th Cir. 2016).

Here, Plaintiffs have submitted evidence—including sworn testimony—supporting the fact Plaintiffs were required to purchase non-203(m) items, which is all that is required to shift, "[t]he burden [] to the employer to come forward with [ ] evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016); *see also Ettorre v. N.Y. Pizzeria, Inc.*, No. H-19-245, 2021 U.S. Dist. LEXIS 80483, at *4 (S.D. Tex. Apr. 27, 2021) (Hughes, J.) (holding employer was divested of the tip credit defense where employer made impermissible deductions and failed to keep adequate records to substantiate the deductions), *aff'd sub nom* 2022 U.S. App. LEXIS 7295 (5th Cir. Mar. 18, 2022); *Sullivan v. PJ United, Inc.,* 362 F. Supp. 3d 1139, 1148 (N.D. Ala. 2018)(rejecting employer's argument that it is an employee's "failure to keep records of his actual expenses that is to blame

for the void in the record, and not Defendants themselves.").

During their employment, it is undisputed that Plaintiffs paid for uniforms (e.g. shirts, vests, non-slip dress shoes, dry cleaning), tools (e.g. pepper mills, pepper mill holsters, crumbers, server books, ink pens, wine openers, black and silver sharpies, permanent markers, lighters, wine keys, flashlights), and other items needed to work at Perry's (e.g. TABC certification, food handler's license, and a cash bank of $100). *See* Pls SOF ¶¶ 4-6.

Because Defendant required Plaintiffs to purchase uniforms and other non-203(m) items— items that are not board, lodging, or other facilities—Defendant violated the tip credit as a matter of law. *See e.g.,* 29 C.F.R. §§ 531.3 (d)(1)-(2). Defendant chose to shift the costs of non-203(m) items to Plaintiffs, and in doing so, Defendant violated the FLSA's tip credit and anti-kickback provisions. cf. *Ettorre*, 2022 U.S. App. LEXIS 7295, at *9 (any "deduction violates §203(m) unless the 'facilities' it covers counts as a 'wage.'"); *Chisolm v. Gravitas Restaurant, Ltd.*, 2008 WL 838760, *4 (S.D. Tex. 2008) (holding that a $1 per shift glass-breakage fee violated the tip credit); *Reich v. Priba Corp.*, 890 F. Supp. 586, 596-97 (N.D. Tex. 1995) (holding employer violated tip credit by requiring employees to purchase uniforms) (*citing* 29 C.F.R. § 531.3 (d)(1),(2)); *Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010) ("Defendant also 'concedes that it took improper uniform deductions from the paychecks of its servers' which effectively reduced servers' and bartenders' wages below the minimum wage required under section 206 of the FLSA."); *Bernal*, 579 F. Supp. 2d at 810 (holding that defendant was not permitted to take a tip credit because it used plaintiffs' tips to pay for shortages and unpaid tabs); see also DOL FOH, § 30d00(e)(4)a ("An employer that claims an FLSA 3(m) tip credit may not take deductions for non-3(m) costs (e.g., walkouts, cash register shortages, breakage, cost of uniforms, etc.), because any

such deduction would reduce the tipped employee's wages below the minimum wage.").

As discussed *supra*, it is unlawful for Defendant to require Plaintiffs to pay for any non-203(m) item, whether before or during their employment, and irrespective of whether the item was paid for through a deduction taken directly from their paycheck, or whether Plaintiffs paid for such items out-of-pocket, or on their own. [10] Accordingly, because Defendant required Plaintiffs to pay for various non-203(m) items, Defendant violated the tip credit as a matter of law.

**B.      Defendant did not distribute the tip pool pursuant to an agreement among Plaintiffs and thus Defendant unlawfully controlled Plaintiffs' tips vis-à-vis the tip pool**

Moreover, an employer violates the tip credit "if the employer exercises control over a portion of the employee's tips." *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998); *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 894 (D. Md. 2011) (finding violation of the FLSA where employer exercised control over employee's tips in violation of the tip credit provisions); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467-68 (5th Cir. 1979) (employees were entitled to receive from their employer the full minimum wage where they were not allowed to keep all of the tips they received) (citing *Richard v. Marriott Corp.*, 549 F.2d 303, 304-305(4th Cir. 1977)); *Brennan v. Haulover Shark and Tarpon Club, Inc.*, No. 74-1276- Civ., 1986 WL 587, at *16 (S.D. Fla. Jan. 27, 1996) (employer lost tip credit when it diverted a portion of employee's tips to a "vacation fund" for long term employees). Absent a contrary and lawful agreement, tips are

---

[10]      *See e.g., Nail v. Shipp*, No. 17-00195-KD-B, 2019 U.S. Dist. LEXIS 132072, at *18 (S.D. Ala. 2019) (finding the resulting violation "cannot be avoided by simply requiring [Plaintiffs] to make such purchases on their own, either in advance of or during the employment.") (quoting *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002)); DOL FOH 30c12(e)(3) ("employers may not avoid such costs by requiring employees to obtain uniforms before starting the job. In such a case, the cost of the uniform is, in effect, an advance of an expense that must be borne by the employer.").

the property of the employee who earned them. *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 397 (1942); 29 C.F.R. § 531.52 ("Tips are the property of the employee. . . .").

Indeed, "tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid." *See Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); *see also* 29 C.F.R. § 531.54 (defining a permissible "pooling arrangement" as one where "the employer redistributes the tips to the employees <u>upon</u> <u>some</u> <u>basis</u> <u>to</u> <u>which</u> <u>they</u> <u>have</u> **<u>mutually</u>** **<u>agreed</u>** among themselves") (emphasis added); *see also* 29 C.F.R. § 531.52 ("Tips are the property of the employee. . . .").

For example, an employer violates the tip credit where the employer, like Defendant did in this case, unilaterally decides how to distribute the tip pool, including using the tip pool to fund the flat hourly wages paid to its other employees. *See e.g., Donovan v. Tavern Talent and Placements, Inc.*, 84-F-401, 1986 U.S. Dist. LEXIS 30955, 1986 WL 32746, at *4 (D. Colo. 1986) (finding "an agreement whereby the employer would own the tips received and could use those tips to satisfy the minimum wage" was not valid under the Act); *Wright v. U-Let-Us Skycap Services, Inc.*, 648 F.Supp 1216, 1217 (D. Colo. 1986) (finding agreement where plaintiffs turned in all tips and defendant reimbursed them just up to the amount that would equal minimum wage was in blatant contravention of 29 U.S.C. § 203(m)).

In *Cross,* the court found employees who are paid flat hourly wages are not proper tip pool recipients. *See Cross v. 440 Corp.*, No. 2:06-CV-0191-WCO, 2008 U.S. Dist. LEXIS 144933, at *13 (N.D. Ga. 2008). Specifically, the court held that "440 Corp. made a business determination with the hope that offering fixed salaries would attract high-quality food runners and hostesses. (Defs.′ Statement of Material Facts ¶ 6). In doing so, 440 Corp. removed these employees from the

statutory definition of tipped employees, rendering them ineligible to participate in a valid tip-pool arrangement." *Id.* at *13.

Similarly, in *Morataya,* the court held an employer's use of tips to compensate employees at predetermined hourly rates without regard to how many tips were actually collected violated the FLSA's tip credit restrictions. *Melgar Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, No. GJH-13-01888, 2015 U.S. Dist. LEXIS 93975, at *16 (D. Md. July 17, 2015). At issue in *Morataya* was the employer's use of tips to pay employees a set amount without regard to how many tips were actually collected. *Id.* ("Defendants collected Plaintiff's tips and reimbursed Plaintiff a set amount without regard to how' many tips were actually collected by Plaintiff and her co-workers."). The court held such a "payment system did not meet the requirements of § 203(m) and the weekly cash payments cannot be used to offset the minimum wage requirements." *Id.*

In *Priba,* another court held, after a bench trial, that the defendant failed to satisfy its burden of proving the validity of its tip pool because defendant failed to show the tip pool was lawfully distributed pursuant to an agreement among the employees who funded it and the alleged recipients. *Reich*, 890 F. Supp. at 596. The court found "[n]one of the waitresses who testified at trial for either party could state which employees shared in the tip pool." *Id.* The court held "[t]he tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid." *Id.* (citing *Barcellona,* 597 F.2d at 467). Here, the court noted the "tip pool appeared to be rather elusive even to the employees who funded it." *Id.* As a result, the court held the employer failed to prove "the existence of a valid tip pool arrangement between employees as defined by § 3(m) of the FLSA, 29 U.S.C. § 203(m)." *Id.*

In *Lu,* an employer was found to be unlawfully controlling its employees tips in violation of

the tip credit because the employer was "able to improperly increase or decrease certain employees' tip shares." *See Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007). On this basis, the court denied defendant's motion for summary judgment finding "material issues of fact remain in dispute on the question of whether management improperly exerted influence over the distribution of the tip pool, in violation of federal law." *Id.* (citing 29 C.F.R. § 531.54)(defining permissible "pooling arrangement" as one where "employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves[.]"").

Like the defendants in *Lu, Priba, Cross, and Morataya,* here, Defendant used the tip pool as its personal piggy bank—Defendant used the tip pool to fund the wages it was obligated to pay its other employees. For instance, when Defendant decided to give a raise to one of its employees, instead of utilizing Defendant's own money, Defendant took tips from the tip pool to cover the new, guaranteed hourly wage it promised to pay them.

Plaintiffs also had no input or knowledge that their tips were being used to fund the fixed hourly wages Defendant was obligated to pay its other employees—those decisions were made unilaterally by Defendant and without any input or knowledge of Plaintiffs. Cf. *Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) ("[t]he tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid.") (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); 29 C.F.R. § 531.54 (defining a permissible "pooling arrangement" as one where "the employer redistributes the tips to the employees <u>upon</u> <u>some</u> <u>basis</u> <u>to</u> <u>which</u> <u>they</u> <u>have</u> **mutually** **agreed** among themselves") (emphasis added); *Lu*, 503 F. Supp. 2d at 712 (a permissible "pooling arrangement" is one where "the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves.").

Because Defendant unlawfully controlled Plaintiffs' tips vis-à-vis the tip pool, Defendant violated § 203(m) of FLSA as a matter of law.

## C.     Defendant cannot show that it fully distributed the tip pool solely among employees who were engaged in customarily and regularly tipped duties

In order to obtain a tip credit, the FLSA mandates that employers ensure "all tips received by [each] employee [are] retained by the employee . . . [.]" 29 U.S.C. § 203(m). The sole exception to the requirement that employees retain all tips earned, is where employees are required to contribute tips to a lawful tip pool. *See Id.*[11] However, tip pools are only valid, and thus lawful, if the employer can prove that all tips contributed to the tip pool were fully distributed solely "among employees who customarily and regularly receive tips." *See Williams*, 2020 U.S. Dist. LEXIS 106701, at *9 (N.D. Tex. June 18, 2020) (employer failed to show it fully distributed the tip pool solely among customarily and regularly tipped employees); *Guillory v. PF&B Mgmt., LP*, 2013 U.S. Dist. LEXIS 39484, at *5 (S.D. Tex. Feb. 27, 2013) ("If an employer cannot show that the tip pool was distributed solely among customarily and regularly tipped employees, the employer cannot take a tip credit and must pay its employees the full minimum wage under the FLSA.").

"Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity." *Montano*, 800 F.3d at 190 (5th Cir. 2015) (quoting 29 C.F.R. § 531.52). In the restaurant industry, however, customers "tips are left on the table, and are usually undesignated." *Id.* (citation omitted). Nevertheless, "[e]ven without direct evidence of the intended recipients of the tips, we can employ

---

[11]     Defendant "ha[s] the burden to prove it operated a legal tip pool." *See Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011); *Barcellona*, 597 F.2d at 467 (5th Cir. 1979) (holding that TGI Friday's had the burden to prove a valid tip pool arrangement upon the questioning by its wait staff).

several tools to infer who the recipients are." *Montano*, 800 F.3d at 190 (5th Cir. 2015).

Thus, to determine whether an employee is engaged in an occupation that 'customarily and regularly' receives tips, the focus is properly drawn to the question of whether the employee performs important customer service functions—including the amount and extent of an employee's customer service interaction with customers. *See Montano*, 800 F.3d at 190 (5th Cir. 2015); *Roussell*, 441 F. App'x at 231 (5th Cir. 2011); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550-51 (6th Cir. 1999). The inquiry must focus on whether an employee is performing important customer service functions that are of the kind that ordinarily evokes tipping generosity. If the average customer would not contemplate tipping the employee, then they are not employees who customarily and regularly receive tips. *See e.g., Roussell*, 441 F. App'x at 231 (5th Cir. 2011) (holding that direct customer interaction is highly relevant because customers are much more likely to tip an employee with whom they have interacted with and who assisted in serving them); *Wajcman v. Inv. Corp. of Palm Beach*, 07-80912-CIV, 2008 WL 783741, at *5 (S.D. Fla. Mar. 20, 2008) ("[i]n determining whether an employee is engaged in an occupation that 'customarily and regularly' receives tips ..., the focus is properly drawn to the question of whether the employee performs important customer service functions . . . .") (citing *Dole v. Cont'l Cuisine, Inc.*, 751 F.Supp. 799 (E.D. Ark. 1990); *Elkins v. Showcase, Inc.,* 237 Kan. 720, 704 P.2d 977, 989 (1985)); *Wajcman*, 2008 WL 783741, at *4 (S.D. Fla. Mar. 20, 2008) ("[T]he the inquiry properly looks to both the quantity and quality of customer interaction.").

The Court must consider the importance of customer interaction, not just customer exposure. *See Montano*, 800 F.3d at 193 (5th Cir. 2015). To be a customarily and regularly tipped employee, and thus lawfully paid from the tip pool, the employee must perform front-of-the-house

duties, have direct customer interaction, and provide important customer service functions such that a customer would intend to tip that person for the service they provided. *Id.* at 193. A customer is more likely to tip someone with whom he has contact, or at least sees assisting in the service. *Id.*

Indeed, "in determining whether an employee customarily and regularly receives tips, a court — or a factfinder — must consider the extent of an employee's customer interaction," as well as "whether the employee is engaging in customer service functions." *Id.* The determination of whether an employee is a proper tip pool participant "is necessarily fact intensive because restaurants vary on the type of duties assigned to each of their employees." *Barrera v. MTC, Inc.*, No. SA-10-CA-665-XR, 2011 U.S. Dist. LEXIS 83468, at *14-15 (W.D. Tex. July 29, 2011) (citing *Pedigo,* 722 F. Supp. at 730 (W.D. Tex. 2010)). "The legal test, therefore, requires an assessment of the actual duties performed by the particular employee in question." *Id.*

For example, in *Myers,* the Sixth Circuit analyzed whether a restaurant could utilize tips to pay its servers during shifts where they were assigned to work as "salad preparers." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 548 (6th Cir. 1999). During shifts where the servers worked a "salad shift" they prepared and plated salads on the line in the kitchen. *Id.* Despite the same employees who worked as salad preparers working as servers during every other shift except for one shift a week where they were assigned to work as salad shift, the Sixth Circuit held the employer violated the tip credit by using tips to pay the servers during their assigned salad shifts. *Id.* at 550-51. As the Fifth Circuit later noted, "[t]he [Sixth Circuit] found it irrelevant that the 'salad preparers' were waiters who were assigned to prepare salads for certain shifts. What mattered was their *job duties* during the shifts in question, *not* their titles." *Montano*, 800 F.3d at 192 n.11 (5th Cir. 2015) (citing *Myers*, 192 F.3d at 550-51 (6th Cir. 1999)).

The Fifth Circuit reached a similar conclusion involving the tip eligibility of Chili's QAs (a/k/a expos or expediters) who worked at Chili's. *Roussell*, 441 F. App'x at 233 (5th Cir. 2011). In *Roussell,* the issue was whether Chili's could use tips from its tip pool to pay employees who worked as "QAs"[12] (a/k/a expo or expeditor). *Id.* At issue in *Roussell* was Chili's practice of using the tip pool to pay its QAs who working each shift. *Id.* It was undisputed Chili's assigned its servers to work as QAs during some shifts. *Id.* The QAs/expos were responsible for *inspecting completed food orders* from the kitchen, *garnishing plates,* and *delegating the delivery of food to customers*. *Id.* at 225. The Fifth Circuit found it irrelevant that Chili's assigned employees to work shifts as, both, QAs and servers. *Id.* at 233. Ultimately, the Court affirmed the jury's verdict, finding Chili's violated the tip credit by using tips from the tip pool to pay employees, including servers, during any shift where they were assigned QA duties. *Id.* at 233 ("It follows that servers working an occasional QA shift are, just like QAs, ineligible to participate in mandatory tip pools during those shifts.").

After its decision in *Roussell,* the Fifth Circuit held in *Montano*, "whether an employee is one who 'customarily and regularly receives tips' is a fact-intensive inquiry[.]" *Montano*, 800 F.3d at 194 (5th Cir. 2015). Critical to the analysis is the job *duties* the employee performed during the shifts in question. *See Id.* at 192 n.11 (citing *Myers*, 192 F.3d at 550-51 (6th Cir. 1999)); *Reyes v. Topgolf Int'l, Inc.*, No. 3:17-CV-0883-S, 2018 U.S. Dist. LEXIS 141736, at *11 n.7 (N.D. Tex. Aug. 2, 2018) ("The fact that these employees were called 'muckers' and not 'dishwashers' is not dispositive in characterizing them as tipped or non-tipped employees because 'a restaurant's job-title nomenclature is not dispositive.'")(quoting *Barrera*, 2011 U.S. Dist. LEXIS 83468, at *4-5

---

[12] At Chili's the QAs/expos were responsible for inspecting completed food orders from the kitchen, garnishing plates, and delegating the delivery of food to customers. *See Roussell*, 441 F. App'x at 225.

(W.D. Tex. July 29, 2011))(citation omitted).

Ultimately, the "the goal of the inquiry" must focus on "determining the customer's intent." *Montano*, 800 F.3d at 193 (5th Cir. 2015). Here, it is undisputed that Defendant distributed the tip pool to pay employees who were engaged in nontipped duties including cleaning the restaurant, cleaning the restrooms, scrubbing floors, preparing food, and other duties that are indisputably nontipped, back-of-the-house or janitorial duties. Accordingly, by distributing the tip pool to pay employees who were unequivocally **not** engaged in customarily and regularly tipped duties, Defendant violated the tip credit as a matter of law.

1. **Defendant used the tip pool to pay employees who were engaged in nontipped duties such as cleaning bathrooms, scrubbing floors, preparing food, and various other nontipped and back-of-the-house duties**

As the Fifth Circuit recognized, there are many **non**-tipped employees who aid waiters or who are important to provide dining service to the customer—to be customarily and regularly tipped requires consideration of whether the employee worked in a front-of-the-house position, the extent (quality and quantity) their job is to provide a service to the customer that involves direct customer interaction, the type of service provided, and ultimately, whether the customer intended to tip them. *See Montano*, 800 F.3d at 193 (5th Cir. 2015); *see also Montano II*, 726 F. App'x at 973 (5th Cir. 2018)(analyzing holding in first appeal stating, "this court noted that the "common thread" of many cases was "to require a tipped employee to have more than de minimis interaction with the customers who leave the undesignated tips.").

In fashioning a rule to determine whether an employee is engaged in customarily and regularly tipped duties, courts begin with the foundational principle underlying the practice of tipping: "[w]hether a tip is to be given, and its amount, are matters determined solely by the

customer, who has the right to determine who shall be the recipient of the gratuity." *Montano*, 800 F.3d at 190 (5th Cir. 2015) (quoting 29 C.F.R. § 531.52) (citing *United States v. Conforte*, 624 F.2d 869, 874 (9th Cir. 1980) (a "tip" is "a voluntary payment in an amount, and to a person, designated by the customer")). With this foundational principle in mind, courts find that direct customer interaction is relevant because customers are much more likely to tip an employee with whom they have interacted with and who assisted in serving them. However, customer interaction alone is not dispositive. *See Wajcman*, 2008 WL 783741, at *4 ("[T]he the inquiry properly looks to both the quantity and quality of customer interaction.").

The rule is not without limits. Indeed, recognizing that employers could misuse the tip credit to pay dual job employees who have may have a title such as busser "but who function in actuality as bussers, janitors, and chefs at least part of the time, the DOL promulgated the dual jobs regulation and issued an interpretative guidance. Together, these two provisions clarify the boundaries of acceptable tip credit use and ensure that a server's tips serve as a gift to the server, as opposed to a cost-saving benefit to the employer." *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 633 (9th Cir. 2018); *see also* 29 C.F.R. § 531.56 (recognizing some employees have dual jobs and are only a 'tipped employee' when engaged in that job in which he is tipped); DOL FOH 30d00(d) ("When an individual is employed in a tipped occupation and a non-tipped occupation(dual jobs), the tip credit is available only for **the hours** spent in the tipped occupation.").

Other courts have adopted a similar application of the "dual jobs" regulation in cases with circumstances similar to those presented here. *See e.g., Barrera*, 2011 U.S. Dist. LEXIS 83468, at *3 (finding 29 U.S.C. § 203(t) limits tip-pool eligibility to employees "engaged in an occupation in which [they] customarily and regularly" receive tips) (citing *Kilgore*, 160 F.3d at 301 (6th Cir.

1998); *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1173 (11th Cir. 2021) ("By its terms, the dual-jobs regulation observes that, in some situations, despite performing work for only one employer, an employee works in two occupations. When that happens and only one of the duties is a tipped occupation, the regulation explains, the employer can take the tip credit for only the hours the employee performs her tipped occupation."); *Marsh*, 905 F.3d at 633 (9th Cir. 2018) (finding the dual jobs regulation is meant to "clarify the boundaries of acceptable tip credit use and ensure that a server's tips serve as a gift to the server, as opposed to a cost-saving benefit to the employer."); *Fast v. Applebee's Int'l, Inc.*, No. 06-4146-CV-C-NKL, 2010 U.S. Dist. LEXIS 19571, at *16 n.7 (W.D. Mo. Mar. 4, 2010) ("There is no reasonable argument that cleaning bathrooms is related to occupations where food and beverages are handled even if both the bathroom and the food promote a customer's enjoyment of the restaurant."), *aff'd* 638 F.3d 872 (8th Cir. 2011).

Ultimately, the question centers on whether an employee is "**engaged in**" (i.e., busy or occupied with[13]) duties that are customarily and regularly tipped. *See e.g., Fast*, 638 F.3d at 876 ("The tip credit does not apply to just any employee who ever received a tip . . . an employee is a tipped employee if two things occur: 1) [the employee] is **engaged in** an occupation, and 2) the occupation is one in which he regularly and customarily receives at least $30 in tips per month.") (citing 29 U.S.C. § 203(t)); *Barrera*, 2011 U.S. Dist. LEXIS 83468, at *3 (W.D. Tex. July 29, 2011) (finding § 203(t) limits tip-pool eligibility to employees "**engaged in** an occupation in which [they] customarily and regularly" receive tips) (citing *Kilgore*, 160 F.3d at 301 (6th Cir. 1998).

Indeed, an employee does not gain tipped status by an occasional visit to the dining room

---

[13]    *see also In re Thurmon,* 625 B.R. 417, 422 (Bankr. W.D. Mo. 2020) ("The plain meaning of 'engaged in' means to be actively and currently involved.").

floor. *See e.g.,* 29 C.F.R. § 531.56 (recognizing that some employees have dual jobs and an employee is only a 'tipped employee' when engaged in that job in which he is tipped); DOL FOH 30d00(d) ("When an individual is employed in a tipped occupation and a non-tipped occupation(dual jobs), the tip credit is available only for the hours spent in the tipped occupation.")

*Pedigo*, 722 F. Supp. 714 is on point. There, the defendant included dishwashers in its tip pool but argued that was acceptable because they occasionally bussed tables, ran food to tables, or sometimes performed bar back duties. *Pedigo,* 722 F. Supp. at 732 (W.D. Tex. 2010). The court was not convinced because "the unconverted evidence reveal[ed] that dishwashers' primary duties including washing dishing, shucking oysters and peeling shrimp." *Id.* Given this evidence, the court held that the defendant "has failed to carry its burden of proving that [the restaurant's] dishwashers regularly and customarily receive tips as required in order to maintain a valid tip pool under section 203(m). Thus, Plaintiffs are entitled to summary judgment on this issue." *Id.*

Similarly, in *Lopez,* the court held where an employee performs nontipped and tipped duties, the employee may only be paid from the tip pool for the time spent in the tipped occupation. *Lopez*, 2021 U.S. Dist. LEXIS 132407, at *25-26 (N.D. Tex. 2021). The court rejected the employer's argument that the employee was lawfully included in the tip pool because the employee worked in both a tipped occupation and in a nontipped occupation. *Id.* Instead, the court held, the defendant was prohibited from using plaintiffs' tips to pay employees "employed in both tipped and non-tipped occupations." *Id.* ("when a person is employed in both tipped and non-tipped occupations, 'no tip credit can be taken for his hours of employment in his occupation [as a non-tipped employee].'")(quoting 29 C.F.R. § 531.56(e)). Therefore, the court held the employer could not utilize the tip credit to pay its servers who contributed tips to the tainted tip pool. *Id.*

Here, Defendant distributed the tip pool to pay employees who it labeled "bussers", "food runners", "hostesses", "service well", "barback", and "server assistant." Despite the use of these job-title nomenclatures, these employees were paid with tips even though they were not engaged in performing customarily and regularly tipped duties.[14] Indeed, Defendant paid these employees with tips from the tip pool even though they were performing clearly nontipped duties—duties that are more appropriately categorized as janitorial, maintenance, or back-of-the-house duties.

Moreover, utilizing Defendant's approach, an employer could take a tip credit for all work performed by an employee so long as the employee makes an occasional visit to the dining room or the customer cannot be satisfied without them. That would mean, instead of paying one employee $7.25 an hour to do non-tipped work, such as cleaning bathrooms, washing dishes, preparing food, or working in the kitchen, a restaurant could just assign these duties to a "busser" and pay them using tips from the tip pool. Indeed, that is exactly the approach Defendant takes—Defendant is effectively appropriating the tips from Plaintiffs' and other employees' tip producing work to subsidize wages for work that neither produces tips nor directly supports tip-producing work.

Despite taking this approach, an employee is not transformed into a lawful tip pool recipient just because the employee makes an occasional visit to the dining room or the customer cannot be satisfied without them. *See e.g., Montano*, 800 F.3d at 193 (5th Cir. 2015) (finding "it is difficult to imagine more important contributions to diner satisfaction than providing a meal (a chef) and clean

---

[14]    *See, e.g., Reyes*, 2018 U.S. Dist. LEXIS 141736, at *11 n.7 (N.D. Tex. Aug. 2, 2018) ("The fact that these employees were called 'muckers' and not 'dishwashers' is not dispositive in characterizing them as tipped or non-tipped employees because 'a restaurant's job-title nomenclature is not dispositive.'")(quoting *Barrera*, 2011 U.S. Dist. LEXIS 83468, at *4-5 (W.D. Tex. July 29, 2011) (citation omitted)).

silverware with which to eat it (a dishwasher). [However, t]o customarily and regularly receive tips requires more."); *Pedigo*, 722 F. Supp.2d at 732 (W.D. Tex. 2010) (rejecting employer's arguments that a dishwasher was lawfully included in the tip pool "because they occasionally bussed tables, ran food to tables, or sometimes performed bar back duties.)

Like the "mucker" in *Reyes,* the "busser" in *Lopez,* or the "shucker" in *Pedigo*, here, by including the "busser" in the tip pool, for example, who was responsible for cleaning the restaurant and the restrooms, Defendant violated the tip credit as a matter of law. Cf. *Fast v. Applebee's Int'l, Inc.*, No. 06-4146, 2010 U.S. Dist. LEXIS 19571, at *16 n.7 (W.D. Mo. Mar. 4, 2010) ("There is no reasonable argument that cleaning bathrooms is related to occupations where food and beverages are handled even if both the bathroom and the food promote a customer's enjoyment of the restaurant."). Accordingly, because Defendant distributed Plaintiffs' tips to pay employees who were engaged in nontipped duties, Defendant violated the tip credit as a matter of law.

## 2. Defendant concedes it distributed tips to off-hour employees who were not present during the shift when the customer who left the tip was dining at the restaurant

Here, Defendant's method of distributing the tip pool fails the Fifth Circuit's ultimate inquiry: determining the customer's intent. Critically, Defendant concedes it used customer's tips to pay the wages of its other employees who were not present, working at the restaurant when the customer who left the tip was dining at the restaurant. By using tips to pay employees who were not working at the restaurant during the shift in question, Defendant violated "the goal of the inquiry: determining the customer's intent." *See Montano*, 800 F.3d at 193 (5th Cir. 2015).

An off-hour employee is—by definition—not working during the shift when the customer is dining at the restaurant, and thus, could not be involved *whatsoever* in serving the customers who left the tips. Cf. *Myers*, 192 F.3d at 548 (6th Cir. 1999) ("One can distinguish hosts from restaurant

employees like dishwashers, cooks, or off-hour employees like an overnight janitor who do not directly relate with customers at all.")(citation omitted). Simply put, a customer could not interact *whatsoever* with an off-hour employee who was not even present when the customer was dining. Cf. *Montano*, 800 F.3d at 193 (holding in order to lawfully include an employee in the tip pool, the employee must either assist in serving the customer "or at least [be seen] assisting in the service.").

Thus, Defendant's decision to distribute customer tips to pay nonexistent off-hour employees violates "the customer's intent." *See Kilgore*, 160 F.3d at 301 (6th Cir. 1998) (finding off-hour employees do not directly relate with customers and therefore are not lawful tip pool recipients). Accordingly, by distributing the tip pool to pay off-hour employees, Defendant violated the tip credit as a matter of law.

### 3. Defendant used the tip pool to pay employees who were working the service well, which is located in the kitchen and out of sight from the customer

Defendant violated the tip credit by distributing the tip pool to employees working the service well, which is located in the kitchen and out of the customer's sight. *See Elkins v. Showcase, Inc.*, 237 Kan. 720, 704 P.2d 977, 989 (Kan. 1985) (holding "non-service bartenders" are not eligible to participate in tip pool because they "were located behind a wall so they did not have any contact with customers and were not in a position to receive tips"); *Krause v. C.I.R.*, 1992 WL 95627 (U.S. Tax. Ct. 1992) ("A service bartender works behind the bar in the game or slot machine area and fills orders taken by the cocktail servers, but has no direct contact with the public.").

"The central difference between employees who are traditionally tipped and those who are not is that the former work primarily in the front of the house where they are seen by and interact with customers, while the latter work primarily or exclusively in the back of the house." *Montano*, 800 F.3d at 193 (citing U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1997 DOLWH

LEXIS 55, 1997 WL 998047, at *1-2 (Nov. 4, 1997) (stating that a dishwasher who occasionally responds to customer requests and has minimal presence in the dining room setting up glasses likely is not a tipped employee)). Therefore, "in determining whether an employee customarily and regularly receives tips, a court . . . must consider the extent of an employee's customer interaction." *Id.*; *see also Id.* at 193 n. 14 (rejecting contention "that a service bartender, as the Department of Labor uses the term, 'works out of sight.'")(citation omitted). Here, the service well worked from the kitchen, did not serve customers, and worked out of the customer's view. Accordingly, Defendant violated the tip credit by including the service well in the tip pool.

## VI.  DEFENDANT EXPLOITED THE TIP CREDIT TO PAY FOR NONTIPPED WORK

### A.  Defendant used the tip credit to pay Plaintiffs less than minimum wage to complete various nontipped work assignments.

Defendant not only used the tip credit to pay the tip pool recipients to perform nontipped duties, but Defendant also utilized the tip credit to pay Plaintiffs while they were performing nontipped duties. Nevertheless, under the tip credit payment scheme, the tip credit is only available "for hours worked by [an] employee in an occupation in which the employee qualifies as a 'tipped employee.'" 29 C.F.R. § 531.59. The Eleventh Circuit set forth the governing framework that applies to the two categories of nontipped work:

(1) An employer cannot take the tip credit for time an employee spent performing duties that were *unrelated* to the tipped occupation.

(2) An employer can take the tip credit for time an employee performed duties *related* to her tipped occupation, provided that those duties were not performed by that employee for more than twenty percent of her working hours.

*Rafferty*, 13 F.4th at 1175 (11th Cir. 2021) (quoting *Marsh*, 905 F.3d at 619-20 (9th Cir. 2018). Indeed, "[t]he tip credit does not apply to just any employee who ever received a tip . . . an

employee is a tipped employee if two things occur: 1) [the employee] is engaged in an occupation, and 2) the occupation is one in which he regularly and customarily receives at least $30 in tips per month." *Fast*, 638 F.3d at 876 (citing 29 U.S.C. § 203(t)).

Thus, the threshold question is whether an employee is "engaged in" customarily tipped job duties. The Department of Labor has always interpreted 29 U.S.C. § 203(t) as permitting an employer to take a tip credit against a server's wages in some instances and prohibiting an employer from taking a tip credit against a server's wages in other instances. *See* 29 C.F.R. § 531.56(e) ("Dual Jobs regulation"); *see also, e.g., Driver v. AppleIllinois*, LLC, 890 F. Supp. 2d 1008, 1030 (N.D. Ill. 2012) (holding employees were engaged "in dual jobs because it is undisputed that AppleIllinois employed tipped workers to do the duties of [other] workers when those workers were not scheduled."); *Fast v. Applebee's Int'l, Inc.*, 502 F. Supp. 2d 996, 1003 (W.D. Mo. 2007) ("[A]n employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.") (citing 29 C.F.R. § 531.56 (e)).

Here, Defendant required Plaintiffs to perform tasks that were both related and unrelated to their jobs as servers. Moreover, Defendant required Plaintiffs to perform nontipped labor that, even if related, to Plaintiffs' primary tip generating occupation as a server, was performed for excessive amounts of time (35% to 55% of their time).

**1. Plaintiffs are entitled to the full minimum wage for all time spent performing *unrelated* sidework duties.**

An employee may work for an employer in both a tipped and a non-tipped capacity. 29 C.F.R. § 531.56 (e). An employee working in "dual jobs" is, however, a "tipped employee" only during the time spent performing in the tipped position. *Id.*; *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011). An employer must pay the full minimum wage for all time an employee

spends working in a nontipped occupation. *See e.g., Rafferty*, 13 F.4th at 1175 ("a dual job employee entitled to the full minimum hourly wage for her unrelated work.").

Here, there is no dispute that Plaintiffs were, at times, paid $2.13 while engaged in an occupation which does not customarily and regularly receive tips. cf. *Driver,* 890 F. Supp.2d at 1030 (holding that employees were engaged "in dual jobs because it is undisputed [the restaurant] employed tipped workers to do the duties of [other] workers when those workers were not scheduled."); *Marsh*, 905 F.3d at 616 (9th Cir. 2018) (en banc) (finding employer owed full minimum wage for any time spent on nontipped work such as cutting and stocking fruit, cleaning the soft drink dispenser and nozzles, replacing soft drink syrups, stocking ice, taking out the trash, scrubbing the walls, and cleaning the restrooms, stock ice, brew tea, and cut and stock fruit every opening shift and to wipe down tables and collect and take out the trash every closing shift.)

In *Driver v. AppleIllinois, LLC*, 739 F.3d 1073 (7th Cir. 2014), the Seventh Circuit held a restaurant could not use the tip credit to pay tipped employees for nontipped duties such as washing dishes, preparing food, or cleaning. *Id.* at 1075. The court held the tipped employees were entitled to the full minimum wage for all time they spend performing such nontipped work. *Id.*

In *Dole*, the servers were required to arrive before the restaurant opened to perform several pre-shift preparation duties before the restaurant opened. 740 F. Supp. 1221 (S.D. Miss. 1990). The court found that preparation duties performed before the restaurant opened were not incidental to a restaurant server's tipped duties. *Id.* at 1228. Therefore, the court held, no tip credit could be taken and the servers were entitled to the full minimum wage during these times. *Id.*

Here, like the employees in *Dole*, there is no dispute Plaintiffs were required to arrive at least one hour before the restaurant opened to perform various nontipped duties before the

restaurant opened. Plaintiffs were likewise required to perform closing duties late at night, several hours after the restaurant had already closed. Like the servers in *Dole*, Plaintiffs are therefore entitled to the full minimum wage for their time performing nontipped job duties when the restaurant was closed.

In addition, Defendant often failed to fully staff the restaurant including, for example, Defendant often failed to schedule all support staff positions to work during Plaintiffs' shifts. Therefore, like the servers in *Driver*, Plaintiffs were forced to complete duties normally assigned to these absent positions. cf *Driver,* 890 F. Supp.2d at 1030 (holding employees were engaged "in dual jobs because it is undisputed [defendant] employed tipped workers to do the duties of [other] workers [who] were not scheduled."); *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA-854 (Dec. 20, 1985) (finding violation where only one server assigned to perform "all preparatory duties . . . [that] extend[ed] to the entire restaurant rather than the specific area or customers which they serve.").

Plaintiffs were routinely required to wash and polish plate ware and glassware, perform kitchen work, perform maintenance work such as fixing barstools, and other nontipped tasks. *See* cf. *Marsh*, 905 F.3d at 616 (finding employer owed full minimum wage for time spent on nontipped work such as cutting and stocking fruit, cleaning the soft drink dispenser and nozzles, replacing soft drink syrups, stocking ice, taking out the trash, scrubbing the walls, and cleaning the restrooms, stock ice, brew tea, and cut and stock fruit every opening shift and to wipe down tables and collect and take out the trash every closing shift.). Plaintiffs were further required to complete extensive deep cleaning and maintenance throughout the restaurant including. cf. *Rafferty*, 13 F.4th at 1169 (holding employer must pay full minimum wage for unrelated nontipped work such as wiping down

microwave and stoves; washing and scrubbing walls; cleaning and scrubbing refrigerators, sinks, trays, and bins; and detail cleaning the expediter line).

Plaintiffs also performed 30 to 45 minutes of nontipped work on the expo line in the kitchen area each shift, including duties in the kitchen across the expo line, and preparing and filling ramekins with applesauce, butter, ketchup. cf *Driver,* 890 F. Supp. 2d at 1033 n.15 ("silverware rolling is a not a 'related' duty" when "it is done in the expo area of the kitchen next to the expo line."). Defendant elected to pay Plaintiffs $2.13 per hour to perform such work in lieu of fully staffing the restaurant with minimum wage employees to perform these tasks. Because the facts show Plaintiffs performed unrelated nontipped duties, Plaintiffs are entitled to the full minimum wage for all time spent performing them.

2. **Defendant unlawfully exploited the tip credit to pay Plaintiffs to perform substantial nontipped side work in violation of the 80/20 Rule.**

An employer cannot take a tip credit for nontipped work that occupies more than 20% of the server's time—even if such work is related to the server's tipped occupation. "The [80/20 Rule] Guidance also clearly lays out that a server is a dual job employee if her related tasks occupy more than 20% of her hours in a workweek." *Rafferty*, 13 F.4th at 1170; *see also Rest. Law Ctr. v. United States DOL*, 2022 U.S. Dist. LEXIS 30368, at *8 (W.D. Tex. Feb. 22, 2022)

Plaintiffs spent excessive time—far more than the 20% limitation—each shift performing nontipped job duties. Because Defendant failed to keep any records of the time Plaintiffs spent performing nontipped duties, under *Mt. Clemens,* Plaintiffs are entitled to provide testimony that approximates—by a just and reasonable inference—the time they spent performing nontipped duties. Cf. *Rafferty*, 13 F.4th at 1190-91 (reversing district court and holding that "denying a claim simply because the employee cannot produce records of her time worked would reward an

employer's failure to comply with its statutory duty to maintain proper records."); *Fast*, 638 F.3d at 882 (holding "district court properly applied the *Mt. Clemens* burden of proof" because employer "did not maintain sufficient records from which the employees can differentiate between when they performed tipped duties and when they performed related but nontip-producing duties within the meaning of the dual jobs regulation, then the employees can use the relaxed *Mt. Clemens* standard by 'produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'") (quoting *Mt. Clemens*, 328 U.S. at 687); *Wintjen v. Denny's, Inc.*, No. 2:19-CV-00069, 2021 U.S. Dist. LEXIS 35199, at *24-25 (W.D. Pa. Feb. 25, 2021) ("with respect to tipped employees, '[e]mployers are…required to keep records of the hours in which an employee receives tips, and the hours in which they do not—regardless of whether the Dual Jobs regulation applies.'")(citations omitted).

Here, Plaintiffs have provided sufficient evidence under *Mt. Clemens* to reasonably approximate the amount of time they spent engaged in nontipped work each shift. Because Plaintiffs performed nontipped work that, even if related to their occupation as servers, exceeded 20% of their time, Defendant owes Plaintiffs the full minimum wage for all hours worked.

*      *      *

**PRAYER**

Accordingly, Plaintiffs respectfully request this Court to grant Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs further request any such other relief to which they may be justly entitled.